Argued September 28, reversed and remanded October 25, 1976

## ACCIDENT PREVENTION DIVISION, *Petitioner,*
### *v.*
## FOUGHT & COMPANY, INC., *Respondent.*
### (CA 5951)
555 P2d 472

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John Spencer Stewart,* Portland, argued the cause for respondent. With him on the brief was Kobin & Meyer, Portland.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

Following an inspection of a construction site under the control of respondent Fought & Company, Inc. on October 22, 1974, the Accident Prevention Division of the Workmen's Compensation Board (petitioner) issued a "citation and notice of penalty" charging respondent with three violations of the Oregon Safe Employment Act, ORS chapter 654.[1] Pursuant to ORS 654.078 the respondent thereafter filed notice of its intent to contest the citation together with a request for a hearing before the Board. Subsequent to that hearing, the Referee concluded that none of the charged violations had, in fact, occurred and issued an order dismissing the citation in its entirety.

On appeal petitioner seeks review solely of the Referee's finding and conclusion that there had been no violation of Rule 7-6-1, Personal Protective Equipment, Oregon Safety Code for Places of Employment,[2] and requests reversal of the dismissal order with respect to the single charge based upon the alleged violation of that rule.[3]

Rule 7-6-1 provides in relevant part that:

"Employees shall be secured by safety belts and

---

[1] ORS 654.067(1) permits an authorized representative of the Workmen's Compensation Board to enter and inspect any place of employment "at reasonable times"; ORS 654.071(1) authorizes the issuance of a "citation and notice of proposed civil penalty" where, after an inspection, the authorized representative has reason to believe that an employer has violated "any state occupational safety or health law, regulation, standard, rule or order * * *."

[2] Administrative Order 9-1974, adopted by the Board March 20, 1974.

[3] ORS 654.290(2) provides in relevant part that:

"* * * the issuance of orders pursuant to ORS 654.001 to 654.295, the conduct of hearings in contested cases and the judicial review thereof shall be as provided in ORS 183.310 to 183.500, except that:
"* * * * *

"(c) The Accident Prevention Division of the board shall have the same right to judicial review of the order of a referee as any person who is adversely affected or aggrieved by such final order.
"* * * * *."

lifelines, or protected by use of safety nets when they work:

"* * * * *

"b. More than 10 feet above water, ground, or a lower floor or scaffold.

"* * * * *."

Charging respondent with a violation of this rule, petitioner had specifically alleged in its citation that on the date of the inspection an employee had not been provided with either a safety belt or lifeline when "climbing to and working from a rope secured float scaffold at about the 50 foot level" of the structure under construction. At the hearing before the Referee, respondent conceded that its employee had been working without a safety device; it contended, however, that because an "exception" to Rule 7-6-1, adopted by the Board in an "authoritative statement of policy," was applicable to the case, it could not properly be held liable for a violation.

The "policy statement" relied upon by respondent indicated that an "evaluation" by the Board had shown that:

"* * * *certain specific operations* necessary in the erection of structural iron can be done more safely without the utilization of lifelines and safety belts.

"During the erecting and fastening of 'hanging iron,' the 'connectors' must have freedom of movement in order that they may evade inadvertent swings of the suspended iron. 'Hanging iron' is structural material which is suspended from the hoisting apparatus, dependent upon the suspending rigging, which has not yet been pinned, bolted or otherwise fastened. When the fastening has progressed to the point where the material is no longer dependent upon the rigging for support, it is no longer regarded as 'hanging iron.'

"The 'connectors' shall be defined as the workers engaged in fastening the 'hanging iron.' When the task has progressed from the fastening of the 'hanging iron' to the point where the material is no longer dependent on the rigging, the workers are *not* then defined as 'connectors.' This definition shall be based upon the actual tasks

performed rather than upon titles used for payroll or other classification purposes. * * * It is felt by the iron erection industry employers and affected workmen that freedom of movement during the hanging-iron condition adds more to the safety of the worker than is subtracted by operating without a belt.

"*Policy*—The connector, as defined, will not be required to wear the life-line and safety belt during the connecting operation.

"* * * * *

"This policy evaluation and statement is based on the conclusion that a greater hazard will be eliminated by the specific exclusions that would be incurred by a rigid adherance [sic] to the [stipulated] requirements of Rule 7-6-1, Oregon Safety Code for Places of Employment."

In support of its argument that this exception applied to the facts of this case, respondent introduced evidence showing that the employee involved had been hired as a "connector" and that at the time of the alleged violation he had been engaged in a "connecting function" involving the joining of structural members—specifically "bracings"—to "column ends" by the attachment of a single bolt at each end. Although not "joined" before the attachment of the bolts, both the bracings and columns were in place at the time of the operation with neither being suspended from a crane or other rigging device.

In apparent reliance upon this evidence the Referee concluded that the employee involved was, in fact, "working as a connector at the time of the alleged violation." Construing the "statement of policy" cited to exempt "connectors" generally from the lifeline and safety belt requirements of Rule 7-6-1, the Referee then concluded that no violation had occurred.

By its very terms, however, the "exception" adopted by means of the policy statement applies only to "certain specific operations necessary in the erection of structural iron," i.e., operations involving "hanging iron." As indicated in the statement itself, the rationale for the exception is that a "connector"

working with materials suspended by rigging must, in order to avoid injury from materials subject to inadvertent and dangerous movements, be able to move about with greater freedom than would be possible while secured by a lifeline or safety belt. In essence, when an operation involves "hanging iron" the danger of injury from the unexpected movement of the "iron" itself is greater than the danger of an accidental fall. The "exception" relied upon by respondent is clear and unambiguous; it applies to *only* those operations in which the "connector" is dealing with "hanging iron" —*not* to every operation performed by an employee classified as a "connector." As noted in the policy statement, "[w]hen the task has progressed from the fastening of the 'hanging iron' to the point where the material is no longer dependent on the [suspending device]," the exception no longer has any application.

It is undisputed that, as charged, respondent's employee was working some 50 feet off the ground without the use of any of the safety equipment required by Rule 7-6-1; it is equally uncontroverted that the employee was *not* working with "hanging iron" at the time. Under these circumstances the applicability of the Rule and inapplicability of the "exception" to that rule is manifest. The order of dismissal is reversed to the extent that it reflected the Referee's holding that no violation of Rule 7-6-1 had been established,[4] and this case is remanded for the entry of an order imposing an appropriate civil penalty.[5]

Reversed and remanded.

---

[4]To the extent that the Referee's conclusion that respondent had not violated Rule 7-6-1 was based upon an incorrect interpretation of the "exception" embodied in the Board's "policy statement," the order dismissing the citation charging a violation of that rule was "unlawful in substance." ORS 183.482(8)(a). Assuming that the Referee correctly construed the exception, the record is devoid of evidence supporting a conclusion that it would apply under the circumstances of this case. ORS 183.482(8)(d).

[5]ORS 654.086.